JS - 6   **LINK: 29**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Karen Park | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**        **(In Chambers)**

### ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.
## INTRODUCTION

Plaintiff Leslie Hoffman is a 57-year-old former stunt actress who retired in 2000 at the age of 45 due to numerous physical ailments and conditions, some incurred in the course of her acting career. Three years after her retirement, she was hospitalized for extended periods suffering from severe major depression. In 2004, with an effective date retroactive to February 2002, Hoffman was determined to be totally disabled due to her depression, which allowed her to receive Social Security benefits and a general disability pension through Defendant Screen Actors Guild ("SAG") Producers Pension Plan for Motion Picture Actors ("Pension Plan"). Hoffman received payments under that plan through 2008, when she sought to convert her pension to an occupational disability pension that would have given her additional benefits. However, to qualify she had to show that her total disability "occurred in the course of employment covered by th[e] Plan."

In June 2010, the Plan's Board of Trustees denied Hoffman's conversion request on the ground that Hoffman's disability did not occur in the course of her covered employment but as a result of severe major depression which resulted from events and circumstances unrelated to her work. This ERISA action followed. In this case, Hoffman contends that the Board abused its discretion in denying her request for conversion and argues that the Court should apply a more stringent abuse of discretion standard because of procedural irregularities in the review of her

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|----------|------------------------|------|-------------|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

claim. In sum and substance she asserts that the record contains evidence from which an inference could be drawn that her total disability in fact occurred "in the course of her employment." Defendant contends that the undisputed facts support its conclusion that her total disability occurred as a result of her depression and did not occur in the course of her employment, that it therefore properly exercised its discretion, and that it is entitled to judgment as a matter of law.

The Court agrees that a procedural irregularity did occur in the process and that a "skeptical" abuse of discretion review should be undertaken. Even so, Defendant still wins. While there is some evidence in the record that supports an argument that Hoffman's total disability "occurred in the course of her employment," the question is whether the record contains sufficient evidence to support a finding that the Board's conclusion was reasonable. Here the great weight of the undisputed evidence supports a conclusion that Hoffman's total disability was the result of severe major depression which in turn resulted from familial and other personal events and factors completely unrelated to Hoffman's work as a stunt actress. This evidence clearly establishes that the procedural irregularity did not taint the Board's exercise of discretion, which the Court therefore concludes was appropriate as a matter of law even under a more stringent standard of review. The motion for summary judgment is **GRANTED**. The trial in this action presently scheduled to begin on May 8, 2012, is hereby **VACATED**.

## II.
## FACTS & PROCEDURAL HISTORY

### A. THE SCREEN ACTORS GUILD PRODUCERS HEALTH AND PENSION PLANS

SAG is a non-profit corporation and union representing motion picture actors, which enters into collective bargaining agreements with motion picture producers ("Producers"). (Docket No. 38 [Plaintiff's Statement of Genuine Issues ("SGI")] ¶¶ 3, 36.) Two such agreements, the Health Trust and Pension Trust Agreements, created trust funds for the provision of health and pension benefits for eligible actors, via the Defendant Plans. (Id. ¶¶ 9, 33.) The Plans are defined benefit plans subject to ERISA. (Id. ¶¶ 1, 26.) Contributions to the Plan funds are made by the Producers who employ the participating actors, with the rate and amount governed by the collective bargaining agreement. (Id. ¶¶ 10–11, 35.) Both Plans are administered by a single Board of Trustees comprised of 36 members, half of whom are appointed by the Producers, and the other half of whom are appointed by SAG. (Id. ¶¶ 7, 31–32.) The Board of Trustees does not employ Plan participants in any capacity, and it does not charge the Producers a fee to account for the cost of claims payouts. (Id. ¶¶ 93, 94.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

Article IV of each of the Trust Agreements grants the Board the sole authority and power to interpret the Plan terms, by providing that the

> Trustees are authorized and empowered to
> [. . .]
> (d) exercise options, conversion privileges
> [. . .]
> (p) construe the meaning of any doubtful or ambiguous provisions of the . . . Plan and the terms used herein [and]
> [. . .]
> (r) generally to do all things . . . as are necessary in the . . . administration of the . . . Plan, and specifically, but not limited to the plan of . . . eligibilities and benefits . . . .

(Id. ¶¶ 13–14, 37–38; Docket No. 29 [Bernard Decl.] ¶¶ 5–8, Ex. A [Pension Plan] at SAG00496, Ex. B [Pension Trust Agreement] at SAG00405–SAG00406, Ex. C [Health Plan] at SAG00565, Ex. D [Health Trust Agreement] at SAG00435–SAG00437.)  Article IV also created the Benefits Committee and delegated to it the authority to interpret the Plans and to render final, binding decisions on claims appeals under the Plans.  (SGI ¶¶ 15–18, 39–44; Pension Trust Agreement at SAG00409–SAG00410; Health Trust Agreement SAG00439–SAG00440.)

The Pension Plan makes available two types of disability pensions, a general disability pension and an occupational disability pension.  The former is available for participants experiencing any type of "total disability," while the latter applies only to "total disabilities" that "occurred in the course of employment covered by th[e] Plan."  (SGI ¶¶ 20–22; Pension Plan at SAG00470, SAG00514.)  Under the terms of the Pension Plan, a participant is deemed "totally disabled" if

> a. [She] has been awarded a Social Security Disability Benefit by the Federal Social Security Administration in connection with [her] Old Age and Survivor's Insurance Coverage or [she] has been awarded a Supplemental Income Disability Benefit by the Federal Social Security Administration, <u>and</u>
>
> b. The Board of Trustees, in its sole and absolute judgment, finds that on the basis of such competent medical evidence as the Board of Trustees may require to be shown, the individual is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to continue for the individual's lifetime . . . .

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

(SGI ¶ 23; Pension Plan at SAG00470, SAG00514 (emphasis added).)

One of the benefits provided by the Health Plan is the Senior Performers Health Plan, which provides coverage for pensioner participants who are age 65 or older and to participants of any age who receive an occupational disability pension. (SGI ¶ 45; Health Plan at SAG00573.) Thus, the only difference between the Pension Plan's general disability pension and occupational disability pension is that persons eligible for the occupational disability pension are additionally provided with coverage under the Health Plan.

### B. PLAINTIFF'S PHYSICAL INJURIES AND WORKERS COMPENSATION CLAIM

Plaintiff regularly worked as a stunt actress for various producers until May 1, 2000, when, at the age of 45 after 30 years in the business, she ceased working in this field due to health issues. (SGI ¶¶ 46–48.) A medical report authored on December 18, 2002, by Plaintiff's physician in New York, Dr. Richard P. Handler, listed a number of active complaints, including "[b]ilateral shoulder pain, bilateral knee pain, . . . chronic low-back pain, . . . migraine, [and] chronic vomiting syndrome." (Docket Nos. 32, 33 [Fleishman Decl.] ¶ 2, Ex. 1 at SAG00066 [12/18/02 Dr. Handler Medical Report].) The report noted multiple medical procedures undergone and medical conditions from which Plaintiff suffered, including a hysterectomy for fibroids; an appendectomy; a history of Hepatitis C believed to be in remission; reimplantation of the left ureter due to chronic reflux; subsequent "recurrent urethral symptoms with findings of stricture," due to her mother's treatment with DES while Plaintiff was in utero; and a mild form of congenital lumbar scoliois and bilateral shoulder impingements and discomfort, both "contribut[ing] to her inability to continue as a stunt actress." (Id. at SAG00066–SAG00067.) The report stated that a recent MRI of Plaintiff's lumbar spine "showed [a] slight signal loss at all disks from T11–12 through L5/S1," and a "1 mm posterior bulging midline of L4/5 and no other abnormalities except facet artropathy at L5/S1." (Id.)

From May 1, 2000 until October 26, 2006, Plaintiff pursued a workers compensation claim for physical injuries incurred in the course of her work. (SGI ¶ 49.) She was examined in California by an agreed medical examiner, Dr. Armin Sardoff, in July of 2003. (Fleishman Decl. ¶ 2, Ex. 1 at SAG00103–SAG00108 [9/4/04 Dr. Sardoff Medical Report]; Bernard Decl. ¶ 13, Ex. I [6/8/10 Letter from Plaintiff's Father].) Dr. Sardoff's original report is not part of the record; however, in a supplemental report dated September 4, 2004, he concluded that

IT IS reasonably, medically probable that the patient sustained[] multiple, industrially related, orthopaedic[] injuries, to her neck, back, both shoulders and both knees, during her employment as a Stunt Woman, over the last 30 year period

JS - 6    **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

of her employment.

> The patient began to have symptoms, according to one of the medical records, to her neck, left shoulder, and back, as the result of a motor vehicle accident in 1974. Then, the patient has been working as a Stunt Woman for the last twenty-five to thirty years for multiple companies, sustaining multiple injuries over this time, really, on a cumulative trauma basis and ongoing basis from, apparently, approximately, 1979, up to the time that she stopped working in the year 2000.

(9/4/04 Dr. Sardoff Medical Report at SAG00103 (original emphasis).)  Dr. Sardoff filed a third report, dated October 22, 2004, specifying that the trauma causing Plaintiff's injuries continued during her work for her final employer, Entertainment Partners, "up until the last days of work." (Fleishman Decl. ¶ 2, Ex. 1 at SAG00111–00112 [10/22/04 Dr. Sardoff Medical Report].)

Dr. Sardoff's September report made detailed recommendations for work restrictions based on each of Plaintiff's areas of injury, including knees, left shoulder, back, and neck, and concluded that "[r]egarding vocational rehabilitation retraining, [Plaintiff] should not return to her former occupation; this would be foolhardy."  (9/4/04 Dr. Sardoff Medical Report at SAG00106–SAG00107.)  According to Plaintiff's father, who accompanied Plaintiff to California for the examination, Entertainment Partners "admitted that [Plaintiff's] [c]ontinuous [t]raumas as a stuntwoman had disabled her, the question being how severely."  (6/8/10 Letter from Plaintiff's Father at SAG00132.)  Plaintiff's workers compensation claim was ultimately settled for $140,000 through a compromise and release, under which Plaintiff acknowledged that there was a "serious dispute" as to "the nature and extent of permanent disability, if any" and "the duration of temporary disability, if any."  (SGI ¶¶ 50–51; Bernard Decl. ¶ 12, Ex. H [10/26/06 Workers Compensation Settlement and Release] at SAG00141.)

**C.  PLAINTIFF'S MENTAL HEALTH DIFFICULTIES AND SOCIAL SECURITY CLAIM**

**1.  PLAINTIFF MOVES BACK TO NEW YORK AND RECEIVES AN INITIAL ADMINISTRATIVE DENIAL OF HER SOCIAL SECURITY CLAIM FOR DISABILITY BENEFITS**

Sometime in 2002, Plaintiff relocated from Los Angeles to her parents' home in Saranac Lake, New York.  (SGI ¶ 52; 6/8/10 Letter from Plaintiff's Father.)  On September 19, 2002, she filed a Title II application for disability insurance benefits with the Social Security Administration ("SSA"), claiming that her physical injuries had made her disabled since February 24, 2001.  (SGI ¶ 53; see Bernard Decl. ¶ 22, Ex. R [SSA Appeal Decision] at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

SAG00120.)  This claim was denied on January 31, 2003, on the basis that Plaintiff was "not disabled under [SSA] rules."  (SGI ¶ 54; Bernard Decl., Ex. J [1/31/03 SSA Denial].)  Plaintiff retained an attorney to represent her in an appeal.  (6/8/10 Letter from Plaintiff's Father.)

## 2. PLAINTIFF'S PSYCHIATRIC HOSPITALIZATIONS AND DIAGNOSIS OF MAJOR DEPRESSIVE DISORDER

In March 2003, before Plaintiff's SSA appeal was heard, she was admitted on an emergency basis to the Adirondack Medical Center in Saranac Lake due to "acute depression." (SGI ¶ 55; Bernard Decl. ¶ 14, Ex. K [3/24/03 Adirondack Medical Center Admission Report] at SAG00069.)  Plaintiff had been seeing a local psychiatrist, who called her physician, Dr. Handler, to "inform him of her recent severe deterioration and need for sedation." (Id.)  Dr. Handler attended Plaintiff on the day she was admitted; Plaintiff, who had been married from 1985 to 1999, told him that she had previously sought counseling for "spousal abuse" and that she was having a "nervous breakdown," in part due to her move from Los Angeles and "financial distress because her alimony agreement [was not] being honored." (SGI ¶¶ 56–57, 62; 3/24/03 Adirondack Medical Center Admission Report at SAG00068.)  Dr. Handler's admission report noted numerous physical problems, including "widespread" pain impairing Plaintiff's daily activities, "due to [a] radiographically supported degenerative disease," which Handler "speculate[d] is due to the combination of scoliosis and her previous occupation as a stunt artist, for which she is now disabled." (Id. at SAG00069–SAG00070.)  The report noted a "history of depression which has been unsuccessfully treated in the past" with various anti-depressant medications. (Id. at SAG00068.)  However, the report stated that "[t]he primary problem is psychological, but the scoliosis and osteoarthritis is physical." (Id. at SAG00070.)  On March 26, 2003, after three days hospitalization, Plaintiff was discharged.  (SGI ¶ 58; Bernard Decl. ¶ 15, Ex. L.)

Less than a month later, Plaintiff was psychiatrically hospitalized again, this time at Fletcher Allen Care Center ("Fletcher Allen") in Burlington, Vermont, as a result of continued feelings of "anxiousness" and "progressive fits of crying/wailing and increase in suicidal intentions."  (SGI ¶ 59; Bernard Decl. ¶ 17, Ex. M [4/22/03 Fletcher Allen Admission Report].)  Upon admission, Plaintiff told her attending doctor, Dr. Suzanne M. Kennedy, that she "can't take it anymore"; the admission report indicates that her chief complaint was, "Why can't I die?" (SGI ¶ 59; 4/22/03 Fletcher Allen Admission Report at SAG00083.)  Plaintiff reported to Dr. Kennedy that, as a child, her mother had hit her and her maternal grandfather had molested her, and that she had been physically and verbally abused throughout the course of her 13-year marriage.  (SGI ¶¶ 61–62; 4/22/03 Fletcher Allen Admission Report at SAG00083–SAG00084.)  She described stressors including a "complicated divorce," her dog's death in December 2002,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

her "career as [a] stunt woman seemingly ending as well as life's chapter in LA," and her recent return to her hometown, where she had no close friends, to live with her parents in a stressful environment.  (Id. at SAG00083.)  Dr. Kennedy's report noted that Plaintiff was at a high risk of suicide based on her "marital status," "chronic illness," and "family history."  (Id.)  On May 12, 2003, after nearly three weeks in the hospital, Plaintiff was discharged with a diagnosis of "major depressive disorder" and "anxiety disorder not otherwise specified."  (SGI ¶ 63; Bernard Decl. ¶ 18, Ex. N [Fletcher Allen Discharge Report].)

### 3. PLAINTIFF'S SUCCESSFUL APPEAL OF HER SOCIAL SECURITY CLAIM

Following her discharge from Fletcher Allen, Plaintiff appealed the SSA's denial of her application for disability benefits, and was advised that she could submit further evidence to support her claim.  (SGI ¶¶ 64–65; Bernard Decl. ¶ 19, Ex. O.)  On January 23, 2004, Dr. Ruth A. Cassin from the Adirondack Medical Center, who had been treating Plaintiff since September 9, 2003, submitted a report stating that Plaintiff "has been suffering from a serious clinical depression complicated by an enxierty [sic] disorder and major life stressors with episodic suicidal ideation . . . [and] has required three hospitalizations," including one, for a duration of three weeks, during the time that Dr. Cassin had treated her.  (SGI ¶ 66; Bernard Decl., Ex. P [1/23/04 Dr. Cassin Letter]; see Bernard Decl. ¶ 26, Ex. V at SAG00035.)  During her most recent hospitalization, Plaintiff had undergone electroshock therapy.  (See Bernard Decl. ¶¶ 21, 26, Ex. Q [1/27/04 Dr. Handler Letter], Ex. V.)  Dr. Cassin stated that

> At present [Plaintiff] is not able to be gainfully employed and has not been . . . since early 2001.  There are physical limitations preventing her from returning to the kind of work she used to do and many other physically demanding jobs.  Her depression makes her at present unable to undertake assessment and retraining for another kind of empl[]oyment.

(SGI ¶ 67; 1/23/04 Dr. Cassin Letter at SAG00097.)  Dr. Cassin also gave a diagnosis for Plaintiff employing the five-axis method of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV.  Plaintiff's primary ("Axis I") diagnosis was given as "Major Depressive Disorder, Severe, without Psychotic Symptoms" and "Social Anxiety Disorder."  Her "Axis III" diagnosis, which includes "medical or neurological conditions that may influence a psychiatric problem," PsyWeb.com, DSM Disorders Diagnostic Criteria, http://www.psyweb.com/DSM_IV/jsp/dsm_iv.jsp, was given as "S/P Back, Shoulder and Knee Injuries, and surgeries," "Urogenital disorders," and "Chronic Vomiting Syndrome."  Her "Axis V" diagnosis, which "identifies the patient's level of function on a scale of 0-100," with 100 representing "top-level functioning," and is known as the "Global Assessment of Functioning

JS - 6    **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

(GAF) Scale," id., rated Plaintiff as having a GAF of only 25.  (1/23/04 Dr. Cassin Letter.)

Dr. Handler also submitted a letter in support of Plaintiff's SSA appeal, on January 27, 2004; he wrote that Plaintiff

> has been in my care for degenerative thoracolumbar spondylosis complicating scoliosis.
>
> [Her] main and indeed disabling problem is major depression for which she was referred to Four Winds Hospital, Saratoga, NY, where she underwent electric shock therapy and other treatments, and currently is in the care of psychiatrists in this community.

(SGI ¶ 68; 1/27/04 Dr. Handler Letter.)  In her appeal, Plaintiff amended the date of the onset of her disability from February 24, 2001 to February 25, 2002, for reasons that are not fully explained by the record.  (Bernard Decl. ¶ 25, Ex. U.)[1]

On February 20, 2004, the SSA Administrative Law Judge, Robert Wright ("ALJ Wright"), issued a decision in Plaintiff's favor.  The narrative portion of ALJ Wright's decision stated that Plaintiff was disabled within the meaning of the Social Security Act since February 25, 2002, and that Plaintiff "ha[d] not engaged in any substantial gainful activity since the disability onset date."  (SGI ¶ 69; Bernard Decl. ¶ 22, Ex. R [2/20/04 SSA Appeal Determination] at SAG00120.)  The decision explained that Plaintiff

> has the following impairments which are considered to be 'severe' under Social Security Regulations: severe major depression.  The claimant's impairments are attended with the specific clinical signs and diagnostic findings required to meet the requirements set forth in section 12.04 of the Listing of Impairments.  Appendix 1 to Subpart P, 20 C.F.R. Part 404.

(Id. at SAG00120–SAG00121.)  The decision continued: "The claimant has a history of severe major depression with episodic suicidal ideation complicated by numerous physical impairments."  (Id. at SAG00121 (emphasis added).)  It explained that Plaintiff "had been unable to return to her previous job as a stunt woman" since the onset of the disability; that Plaintiff had

---

[1] One piece of correspondence authored by Plaintiff on April 30, 2010, and addressed to the Pension Plan indicates that she was unable to "claim any further back" because her workers compensation claim had not yet been resolved.  (See Fleishman Decl. ¶ 2, Ex. 1 at SAG00031.)

JS - 6    **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

been hospitalized three times for severe depressive episodes; and that Plaintiff's GAF rating of 25 was "consistent with an inability to function in almost all areas." (Id.) The decision observed that Dr. Cassin had stated that Plaintiff's "depression made her unable to undertake assessment and training for any kind of employment," and that Dr. Hal I. Rubin, who had examined Plaintiff in May of 2003, "stated that in his opinion [Plaintiff] was fully disabled from gainful employment secondary to her depression." (Id. (emphasis added).)

The decision observed that "[i]n addition to her mental health impairments t[he] claimant has a history of severe neck and low back pain, degenerative joint disease of the knees, and serious orthopedic problems with her left shoulder," and gave a detailed explication of these conditions, including that "[a]n MRI of the claimant's lumbar spine showed disc space narrowing at multiple levels with disc bulging at the L3-L4 level with mild canal narrowing at that level." (Id.) In addition

> [t]he claimant also has a history of a disorder characterized as chronic founding syndrome. The claimant is reportedly prone to frequent episodes of vomiting. It is unclear whether the claimant's vomiting is related to her mental health impairments or is the result of a separate physical illness.

(Id.) The narrative portion of the decision concluded that

> The claimant has the following mental limitations set forth in 'Part B' of the mental listings: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; three episodes of decompensation, each of extended duration. This conclusion is supported by the opinion of the treating source; the medical signs and findings; the claimant's significant medical treatment history.

(Id.) At its conclusion, the decision made a series of findings, including that Plaintiff "ha[d] not engaged in any substantial gainful activity since the disability onset date"; Plaintiff "has severe major depression which is considered to be a 'severe' impairment under the Social Security Act"; and Plaintiff had been disabled since February 25, 2002. (Id. at SAG00122.) The favorable decision entitled Plaintiff to benefits in the amount of $996.00 per month, retroactive to the onset of her disability on February 25, 2002. (Id.; Bernard Decl. ¶ 23, Ex. S.)

**D.  PLAINTIFF'S QUALIFICATION FOR A PLAN DISABILITY PENSION AND SUBSEQUENT ATTEMPT TO CONVERT IT TO AN OCCUPATIONAL DISABILITY PENSION**

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

### 1. PLAINTIFF'S QUALIFICATION FOR A PLAN DISABILITY PENSION

On August 19, 2004, after receiving notice that Plaintiff had been determined by the SSA to be disabled, SAG-PPHP notified her that she may be entitled to a Disability Pension under the Plan provisions. (SGI ¶ 73; Bernard Decl. ¶ 24, Ex. T.) Plaintiff submitted an application on August 31, 2004. (SGI ¶ 74; Bernard Decl. ¶ 25, Ex. U.) On her application, Plaintiff stated the "nature of her present sickness or injury" as "multiple physical injuries + severe depression," and that she had been "treated by many physicians for multiple disabilities." (Bernard Decl. ¶ 25, Ex. U at SAG00055.) Plaintiff also submitted a letter stating that she has "had many physical disabilities over the past years," including multiple surgeries, neck and back problems, and urogynecological problems due to being a "DES Daughter." (SGI ¶ 75; Bernard Decl. ¶ 26, Ex. V at SAG00034.) In the letter, Plaintiff gave a detailed history of her psychiatric problems since March 2003, including her three hospitalizations, continuing consultation with a psychiatrist and counselor, and diagnosis by six psychiatrists as suffering from severe depression. (Bernard Decl. ¶ 26, Ex. V at SAG00034–00036.) She filed with her renewed application her records from the Adirondack Medical Center and Fletcher Allen; the letters from Dr. Cassin and Dr. Handler; a letter from the facility from which she was then receiving psychiatric care; and the favorable SSA decision. (Id. at SAG00034.)

Plaintiff's application for a disability pension was approved on October 25, 2004, with benefits retroactive to March 2002. (SGI ¶ 77; Bernard Decl. ¶ 27, Ex. W.) To this day, Plaintiff receives a general disability pension in the amount of $952.00 per month. (SGI ¶ 25.) The letter notifying Plaintiff that her application had been approved did not state the basis on which she had been determined to be disabled. However, a medical consultant review form completed on September 17, 2004, by Dr. Robert A. Shakman, the Plan Medical Consultant, states that Plaintiff met the definition for "total disability" on the basis of her "severe depression." (SGI ¶ 76; Shakman Decl. ¶ 3, Ex. A at SAG00052.)[2]

---

[2] There are two additional documents in the administrative record relating to this period of time that are unexplained by the Parties, but which bear on the issues in this litigation. The first document seems to have been inadvertently placed in the middle of the 4/22/03 Fletcher Allen Admission Report. On its face, the document indicates that it is a "Physician's Supplementary Certificate" required to be submitted by Plaintiff in connection with a claim for benefits from the Employment Development Department. (Bernard Decl., Ex. M at SAG00086.) It is signed by Dr. Handler and by Plaintiff in January of 2003, and certifies that she "continue[s] to be disabled and incapable of doing [her] regular work." (Id.) Dr. Handler gives Plaintiff's diagnosis as "[Gastroesophageal Reflux Disease], chronic vomiting syndrome, scoliosis," and states that Plaintiff's "scoliosis now precludes stunt acting," and that Plaintiff will "never" be able to perform her regular or customary work. Neither party relies on this document in making any argument.

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

**2. THE DENIAL OF PLAINTIFF'S REQUEST TO CONVERT THE DISABILITY PENSION TO AN OCCUPATIONAL DISABILITY PENSION**

More than four years later, on November 25, 2008, Plaintiff contacted the Plan about converting her disability pension to an occupational disability pension. (SGI ¶ 78; Bernard Decl. ¶ 28, Ex. X at SAG00283.) The Plan representative with whom Plaintiff spoke explained that "both the SSA administration and [the Plan's] medical consultant [had] approved her [d]isability based on a psychiatric <u>and physical condition</u> and that she needed to submit documentation to show that the nature of her disability is a direct result of a work incurred injury." (SGI ¶ 79; Bernard Decl. ¶ 28, Ex. X at SAG00283 (emphasis added).) More than a year later, on December 17, 2009, Plaintiff advised the Plan that she would submit documents related to her workers compensation claim indicating that she was injured on the job. (SGI ¶ 80; Bernard Decl. ¶ 28, Ex. X at SAG00283.)

In connection with Plaintiff's request, Micki Mills, a Plan employee, sent an email on February 11, 2010, to Michael Chavez, the Director of the Pension Department, stating that, in reviewing the documents submitted, "I see this as the State has declared her disabled due to her work as a Stunt Woman? Let me know and if you agree[.]" (Fleischman Decl. ¶ 2, Ex. 1 at SAG00269.) Chavez responded that he did

> not believe that [Plaintiff] is disabled due to a 'work injury[.]' Her disability was approved by [the Plan's medical consultant] Dr. Shakman based on severe depression as the primary reason. This is also consistent with the decision from [SSA] which she initially appealed and got a favorable decision based on the psychiatric part coupled with severe injuries throughout her '30 year career' but not due to any one injury.

---

The second document is entitled "Attending Physician's Statement of Disability." (Fleishman Decl. ¶ 2, Ex. 1 at SAG00053; Shakman Decl., Ex. A at SAG00053.) Although the document is <u>undated</u>, it appears to have been created on Plaintiff's behalf in the context of her application for a Plan disability pension in 2004, because the document states that "[t]he patient is responsible for the completion of this form without expense to the Pension Plan," and asks whether the patient meets the Plan's total disability definition. The document was created in Saranac Lake, New York, and appears from the doctor's signature and phone number to have been completed by Dr. Handler. (<u>Cf.</u> Bernard Decl., Ex. M at SAG00086.) The document states that Plaintiff is "totally disabled," within the Plan meaning, on the basis of her back injuries, including "congenital scoliosis" and "decades of recurrent spine trauma as [a] stunt actress." Plaintiff's symptoms are stated as "chronic back pain," and the examiner's objective findings are given as "severe thoracic lumbar spondylosis." A separate "remarks" section describes Plaintiff's "depression requiring institutionalization and electroshock within [the] past 12 mo[nth]s." Although this document was part of the administrative record and forms the basis for many of Plaintiff's arguments in this case, curiously, Plaintiff does not explain its origin, and even suggests that she is not familiar with it. (<u>See</u> Docket No. 30 [Opp.] at 10; SGI ¶ 76.)

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

(Id.)  On February 12, 2010, Dr. Shakman submitted a second medical consultant review form for plaintiff's file, in connection with Plaintiff's conversion request.  He stated that Plaintiff

> is disabled under the Plan on the basis of mental illness.  Documents in the file do not address her occupational experience as causitive.  Are there psychiatric reports addressing in detail this issue?

(SGI ¶¶ 81–82; Shakman Decl. ¶ 4, Ex. B [2/12/10 Dr. Shakman Report].)

On February 24, 2010, SAG-PPHP advised Plaintiff, in a letter signed by Mills, that her request for conversion was being denied because "[i]t was determined that [she] qualified for a Disability Pension based on [her] mental illness or due to severe major depression."  (SGI ¶ 83; Bernard Decl. ¶ 29, Ex. Y [2/24/10 Conversion Denial].)  The letter explained that the decision

> is also consistent with the decision from Social Security which was initially appealed and in which you did receive a 'favorable' decision . . . .  Social Security [s]tates in their Findings: **The Claimant has severe major depression which is consider[ed] to be a 'severe' impairment under the Social Security Act.**  In no part of the 'Findings' from Social Security does that office refer to any physical disabilities.

(2/24/10 Conversion Denial (original emphasis).)  A note entered in Plaintiff's Plan file on April 7, 2010, indicates that "[t]he decision to deny was based on [Mills] taking the documentation to Dr. Shakman who reviewed everything and concluded that it was not [o]ccupational in nature." (Fleishman Decl. ¶ 2, Ex. 1 at SAG00009.)

The day after Plaintiff's request was denied, on February 25, 2010, Mills wrote to Christopher Dowdell, the Plans' Chief Operating Officer, Chavez, the Pension Director and Amanda Bernard, another Plan employee, stating that Dr. Shakman's evaluation was

> consistent with the decision from Social Security in which the findings are: The claimant has severe major depression which is considered to be a 'severe' impairment under the Social Security Act.  Ms. Hoffman['s] appeal received a favorable decision based on her severe depression along with injuries throughout her '30 year career' but not due to any one injury.

(Fleishman Decl. ¶ 2, Ex. 1 at SAG00268.)  On March 4, 2010, Bernard wrote to Dowdell,

JS - 6   **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

Chavez, and Mills suggesting that, if Plaintiff appealed the denial and the Board approved the appeal, "the recommendation we came up with was that due to new information submitted by her, she could be converted to occupational disability, but these benefits would only be available moving forward." (Id. at SAG00267.)

### 3. PLAINTIFF'S APPEAL IS DENIED

Plaintiff appealed the Plan's administrative denial on March 25, 2010. (SGI ¶ 84; Bernard Decl. ¶ 30, Ex. Z.) On April 8, 2010, Chavez sought legal advice from the Plans' counsel, Michelle Stimson at Fox Rothschild LLP, regarding whether the Plan was correct in denying Plaintiff's request to convert her pension. (Fleishman Decl. ¶ 2, Ex. 1 at SAG00009, SAG00045–SAG00046.) Chavez recounted that Plaintiff was initially denied SSA benefits on the basis of the medical information she provided, but was granted benefits after providing additional information related to her mental health, and that the SSA had found Plaintiff disabled on the basis of "severe major depression." (Id. at SAG00046.) Chavez stated that "[b]ecause [Plaintiff's] disability is based mostly on her depression, and not from a work incurred injury, we had no alternative but to deny her request to convert to an Occupational Disability [Pension]"; thus, his "recommendation to the Benefits Committee is going to be to deny her request to convert because the nature of her disability is not due to a work related injury." (Id. (emphasis added).) Stimson replied on April 28, 2010, concluding that "the Plan is not legally prevented from denying, at the administrative level, [Plaintiff's] right to convert her Disability Pension to an Occupational Disability Pension." (Id. at SAG00045.) Stimson noted that "[i]n determining whether a participant qualifies for the Occupational Disability Pension, Administration for the Plan generally looks to both the SSA determination regarding whether a disability exists and the SSA determination regarding the cause of the disability." (Id. at SAG00044.) Thus, in denying Plaintiff's request, "the Administration for the Plan followed Plan procedure to base the disability analysis on the determination made by the SSA." (Id.) Stimson reasoned that no law exists preventing the Plan from relying on the SSA determination, and that "[t]here was no evidence presented to the SSA, nor to the Plan, indicating that this mental impairment was the result of an occupational injury." (Id. at SAG00045.)

Plaintiff wrote directly to Chavez on April 30, 2010, highlighting the fact that her SSA benefits had been awarded retroactive to February 2002, but that she had not been treated for depression until March 2003. (Id. at SAG00031.) On May 11, 2010, SAG-PPHP notified Plaintiff that her appearance before the Board's Benefits Committee had been scheduled for June 18, 2010, and reiterated its position on the conversion request. (SGI ¶ 87; Bernard Decl. ¶ 32, Ex. BB [5/11/10 SAG-PPHP Letter].) This letter stated that the Plan's medical consultant and legal counsel had reviewed all documentation submitted by Plaintiff, including her April 30

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

letter, and that

> Based on the information provided, it was determined that your circumstances
> qualify you for a Disability Pension only, but not for an Occupational Disability
> Pension.  The reason for the denial is that the information provided did not
> substantiate that your disability meets this Plans [sic] definition of Occupational
> Disability . . . .
>
> . . . [A] Disability Pension was granted in September of 2004, retroactive to March of
> 2002, the month following the date you were found to be disabled under the Social
> Security Act . . . .  The records provided revealed that initially your request for
> disability under the SSA was denied as there was no indication of a disabling
> physical impairment.  On appeal, an SSI Disability Benefit was subsequently
> awarded you based on additional information which allowed the SSA to conclude
> that you were disabled based on a significant mental impairment rather than a
> physical one. . . .

(5/11/10 SAG-PPHP Letter at SAG00047.)   Thus, although Plaintiff met the age and pension
credit requirements for eligibility, there was "no evidence provided that [her] disability occurred
during the course of employment covered by the Plan."  (Id. at SAG00048.)

On June 4, Chavez forwarded to Stimson, the Plans' attorney, Plaintiff's Workers
Compensation Settlement and Release, and asked whether it could be considered proof that her
disability was occupational.  (Fleishman Decl. ¶ 2, Ex. 1 at SAG00348.)  He also asked whether
the Plan language relating to occupational disability could be interpreted as including disabilities
"due to a number of injuries over the course of [the participant's] employment," or rather was
"restricted to one particular injury which rendered the participant totally and permanently
disabled as defined by the Plan."  (Id.)

That same day, Dowdell, the Plans' COO, emailed Stimson and Mark Hess, another Fox
Rothschild attorney representing the Plans, seeking to schedule a conference call prior to the
appeal hearing.  Dowdell wrote:

> Our basis for denial on this is that essentially she has been certified as totally
> disabled due to her psychiatric illness and not any occupational injuries.  We did get
> some additional information . . . which prompted our medical director to opine that
> her disability may be partially related to her injuries sustained as a stunt woman.  I
> do want to discuss [Chavez's] question . . . in regards to cumulative injury over the

JS - 6     **LINK: 29**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

course of a career vs. a specific injury that happened on a specific day and time. Does the interpretation of the Pension Plans rule (amendment 46) include that this could be a result of years of cumulative injuries?  That wasn't how I first read it but I am thinking that it could be interpreted that way.

My concern is that this could open the door for much of the stunt community to qualify for an occupational disability pension when that was not the case. . . . I don't believe in this case that she has proven that her disability is really occupational but I really want to hash this out with you as soon as possible.

(Id. at SAG00383.)

Plaintiff appeared before the Benefits Committee on June 18, 2010.  (SGI ¶ 88; Bernard Decl. ¶ 3, Ex. CC [6/18/10 Benefits Committee Hearing Minutes].)  Among those present at the appeal hearing were Dr. Shakman, Chavez, Dowdell, and Stimson.  (See 6/1810 Benefits Committee Hearing Minutes at SAG00293.)  The minutes of the hearing reflect that, "[b]ased on Social Security's findings that [Plaintiff] has 'severe' major depression and based on [the Plans'] medical consultant's review of the information provided, [Plaintiff] does not meet the [Pension] Plan's definition" for occupational disability.  (Id. at SAG00307.)  Moreover, "[a]fter a review of all documentation and much discussion, it was the consensus of the Committee that the appeal must be denied" because Plaintiff "did not provide documentation to substantiate that her disability occurred during the course of employment covered by the Plan."  (Id. at SAG00308.)

On June 22, 2010, Dowdell notified Plaintiff in writing, on behalf of the Benefits Committee, that her appeal was denied.  (SGI ¶ 89; Bernard Decl. ¶ 34, Ex. DD [6/22/10 Benefits Committee Denial].)  The letter stated that

After carefully reviewing all of the written and verbal evidence presented, it was the decision of the Committee to deny your request to convert your type of pension from a Disability Pension to an Occupational Disability Pension.  The reason for the denial is that the information provided does not substantiate that your disability meets this Plan's definition of an Occupational Disability . . . .

The records provided revealed that initially your application for disability under the Social Security Administration . . . was denied as there was no indication of a disabling physical impairment.  On appeal, an SSI Disability Benefit was subsequently awarded to you based on additional information which allowed the SSA to conclude that you were disabled based on a significant mental impairment rather

JS - 6    **LINK: 29**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

than a physical one.

(SGI ¶ 90; 6/22/10 Benefits Committee Denial.)  Dowdell asked Stimson to review the denial letter before it was sent to Plaintiff.  (Fleishman Decl. ¶ 2, Ex. 1 at SAG00387.)

### E.  THE PRESENT LAWSUIT

Plaintiff filed a complaint for benefits in this Court on September 16, 2010.  (Docket No. 1.)  On January 27, 2012, Plaintiff made an inquiry into her SSA benefit information at the Social Security District Office located in San Fernando, California.  (Docket No. 31 [Hoffman Decl.][3] ¶¶ 2–4.)  In response to her inquiry, the SSA generated a document stating that

Our records show that Leslie G. Hoffman was found disabled 2/25/2002.  Her disability (1) AFFECTIVE DISORDERS (2) DISORDER OF BACK (DISCOGENIC & DEGENERATIVE) L5 – S1 severe.

(Id. ¶ 4; Fleishman Decl. ¶ 3, Ex. 672 [1/27/12 SSA Report].)[4]

### III.
### DISCUSSION

### A.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where "the movant shows that there is no genuine dispute as

---

[3] Defendants make numerous evidentiary objections to the introduction of Plaintiff's declaration, including that it is not properly signed and that Plaintiff is incompetent to testify.  (See Docket No. 37 [Defendants' Evidentiary Objections to Plaintiff's Opposition] at 1–4.)  The Court does not rely on Hoffman's declaration and therefore declines to rule on Defendants' objections.

[4] Defendants make numerous evidentiary objections to the introduction of this document, including that it was not part of the administrative record and was not properly produced during discovery in this litigation.  (See Defendants' Evidentiary Objections to Plaintiff's Opposition at 1–2, 4.)  A district court may consider extrinsic evidence if reviewing the plan administrator's decision under a de novo standard, but not if the abuse of discretion standard is appropriate, except to determine whether a conflict of interest was present, meriting application of a more skeptical abuse of discretion standard.  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006).  Because the Court determines, infra, that an abuse of discretion standard applies, and because the document is not relevant to the question of conflicts of interest, Defendants' objection is **SUSTAINED**.  However, as will be apparent from the ensuing discussion, consideration of this document would not alter the Court's determination of Defendants' motion for summary judgment.

JS - 6      **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, when addressing a motion for summary judgment, the Court must decide whether there exists "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Id. at 256. The moving party can meet this burden by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court . . . that there is an absence of evidence" supporting a fact for which the nonmoving party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To defeat summary judgment, the nonmoving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial." Anderson, 477 U.S. at 256–57. This evidence must be admissible. See Fed. R. Civ. P. 56(c), (e). The nonmoving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must show that evidence in the record could lead a rational trier of fact to find for it. See id. at 587. In reviewing the record, the Court must believe the nonmoving party's evidence, and must draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

**B. APPLICATION**

**1. PLAINTIFF'S FAILURE TO TIMELY FILE A STATEMENT OF GENUINE ISSUES**

Plaintiff did not file her Statement of Genuine Issues until February 20, 2012, a week after it was due and the same day on which Defendants' Reply was due. (See Docket No. 38.) Under Federal Rule of Civil Procedure 56(c) and this judicial district's Local Rules 7-12 and 56-2, the Court may deem Plaintiff to have admitted Defendants' Statement of Undisputed Facts. Fed. R. Civ. P. 56(c); C.D. Cal. R 56-2; Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001). Nonetheless, the Court considers the merits of Plaintiff's late-filed Statement.

**2. LEGAL STANDARD GOVERNING REVIEW OF BENEFITS DENIAL**

**a. *Abuse of Discretion or Higher Degree of Skepticism?***

A participant in an ERISA benefits plan challenges a denial of benefits under 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The court reviews a denial of benefits de novo <u>unless</u> the plan unambiguously confers discretionary authority on the administrator to determine eligibility for benefits or to construe the terms of the plan. <u>Metropolitan Life Ins. Co. v Glenn</u>, 554 U.S. 105, 111 (2008); <u>Firestone Tire & Rubber Co. v. Burch</u>, 489 U.S. 101, 115 (1989); <u>Abatie</u>, 458 F.3d at 963 (en banc). Where such discretion exists, the court reviews a denial of benefits under an abuse of discretion standard. <u>Metropolitan Life</u>, 554 U.S. at 111; <u>Firestone</u>, 489 U.S. at 115; <u>Abatie</u>, 458 F.3d at 963. Here, the Parties do not dispute that the Plans vest the Board of Trustees with discretion to determine eligibility for benefits and to construe the Plan terms. The abuse of discretion standard therefore applies to the Court's review of the Board's decision.

However, the abuse of discretion standard must be modified if the administrator is acting under a structural conflict of interest. A structural conflict exists where "'the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket.'" <u>Salomaa v. Honda Long Term Disability Plan</u>, 642 F.3d 666, 674 (9th Cir. 2011) (quoting <u>Metropolitan Life</u>, 554 U.S. at 108). Such a conflict "does not convert abuse of discretion review into de novo review," but "must be 'weighed as a factor.'" <u>Id.</u> (quoting <u>Metropolitan Life</u>, 554. U.S. at 116.) Thus, where a structural conflict exists, the court reviews the benefits decision with "a higher degree of skepticism." <u>Id.</u> at 676. "[W]hen viewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, [the court] must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference [it] accord[s] the administrator's decision." <u>Saffon v. Wells Fargo & Company Long Term Disability Plan</u>, 522 F.3d 863, 868–69 (9th Cir. 2008). In this action, the Parties do not suggest that a structural conflict of interest is present. Indeed, the Producers employ the Plan participants, and, under the terms of the Trust Agreements, it is the Producers who fund the Plans, while the Board of Trustees evaluates claims. (SGI ¶¶ 10–11, 35, 93–94.)

Similar to a structural conflict of interest, however, "[a] procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." <u>Abatie</u>, 458 F.3d at 972. "A more serious procedural irregularity may weigh more heavily." <u>Id.</u> By contrast, "[w]hen an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity." <u>Id.</u> Here, Plaintiff asserts three procedural conflicts, as described below, and argues that the Court should apply heightened scrutiny on these bases.

### b. Presence of Conflicts

JS - 6      **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

#### i. The Plan's Consultation of Fox Rothschild Prior to the Appeal

Plaintiff asserts a conflict based on the Plan officers' consultation with Fox Rothschild following the initial administrative denial of Plaintiff's claim. Fox Rothschild now represents Defendants in this action. (See Opp. at 15.) Plaintiff relies on Florence Nightingale Nursing Servs., Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476 (11th Cir. 1995). In that case, Blue Cross served as the claims administrator for an ERISA health plan offered to employees of an unrelated entity, Intergraph Corporation. The health plan was entirely self-funded by Intergraph. Although Blue Cross earned a percentage on claims paid, it received no payment for claims denied. Id. at 1478–79, 1479 n.2. Blue Cross granted only a limited portion of a claim filed by a home health care provider, following two years of litigation and administrative review. Id. at 1478–80. The Eleventh Circuit upheld the district court's findings as to numerous conflicts of interest, namely that (1) Blue Cross desired to maintain its business relationship with Intergraph, which could fire Blue Cross at any time; (2) Blue Cross had a strong pecuniary interest in interpreting the relevant provisions of the plan narrowly, because it would be obliged to apply the same interpretation to identical provisions in the insurance contracts to which it was party as insurer; (3) the claims evaluator, Blue Cross's Assistant Medical Director, was "fully aware that her employer had already engaged in two years of litigation in which it was fighting to deny this claim," and her task was explained to her by a Blue Cross attorney from its in-house legal department who was "intimately involved in advocating Blue Cross's position throughout this litigation"; and (4) numerous procedural irregularities occurred during the proceedings, including that Blue Cross used its own legal department to oppose the claimant in front of the evaluator, no oral hearing was conducted, the evaluator considered materials obtained ex parte by Blue Cross investigators, and the evaluator's opinion was edited by Blue Cross's in-house counsel before it was released. Id. at 1480–82.

Plaintiff argues that a similar conflict exists here. Following the administrative denial, the responsible Plan officers, Dowdell and Chavez, consulted Fox Rothschild in preparation for their presentation at the appeal hearing before the Benefits Committee. (Opp. at 7–9, 15.) Specifically, Dowdell and Chavez asked two Fox Rothschild attorneys, Stimson and Hess, (1) whether the Plan was correct in denying Plaintiff's request, to which Stimson responded (a) that the Plan was not legally prevented from relying on the SSA determination as to the cause of disability, and (b) by confirming that Plaintiff had presented no evidence to the SSA or the Plan that her mental illness resulted from an occupational injury; (2) whether the Workers Compensation Settlement and Release could be considered proof that Plaintiff's disability was occupational; (3) whether the Plan language could be interpreted to include occupational injuries sustained as a result of a series of events, rather than being restricted to injuries caused by a single incident; and (4) to review the letter to Plaintiff, written by Dowdell on behalf of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|----------|------------------------|------|-------------|

| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al |
|-------|--------------------------------------------------------------------|

Benefits Committee following the denial of her appeal.  (See Fleishman Decl. ¶ 2, Ex. 1 at SAG00009, SAG00044–SAG00046, SAG00348, SAG00383, SAG00387.)  Plaintiff argues that, indeed, Defendants admitted to a conflict when they opposed Plaintiff's motion for discovery of pre-litigation communications with Fox Rothschild.  Defendants argued that the fiduciary exception to the attorney client privilege, which provides that attorney advice given to an ERISA plan regarding benefits is not protected, did not apply, because, following the administrative denial, the legal advice "was not considered in the determination of the claim and <u>Defendants'</u> <u>interests had already diverged significantly from Plaintiff's interest by the time of the appeal</u>." (Docket No. 24 at 2 (emphasis added); see Opp. at 15.)

The Plan administrators' consultations with Fox Rothschild attorneys did not create a procedural conflict of interest.  As should be evident from the foregoing, this case bears no resemblance to <u>Nightingale</u>.  Fox Rothschild did not have <u>any</u> involvement with the initial administrative denial made by Plan officers Dowdell and Chavez—as noted in Defendants' discovery response.  Rather, these officers contacted the Plan's attorneys for a non-obligatory post-determination review of the initial denial and for limited legal advice in connection with their preparation for the appeal hearing before the Benefits Committee.  One of the issues on which they consulted their attorneys—whether the Plan language could be interpreted to include occupational injuries sustained cumulatively—was not even at issue in Plaintiff's claim. Moreover, there is no suggestion that Fox Rothschild attempted to influence, or could have influenced, the Benefits Committee's ultimate decision.  The limited involvement described most certainly does not approach the level of that present in <u>Nightingale</u>, and does not suggest that Fox Rothschild played any role in the determination of Plaintiff's request.  Rather, Fox Rothschild played the role one would expect of counsel – it provided legal advice on specific questions presented by its client.  Indeed, that committee members sought such advice tends to show a good faith effort to understand the issues presented and render a fair decision to the plan participant.

**ii.  Denial of a Full and Fair Hearing**

Plaintiff also argues that she was denied a full and fair review.  Plaintiff points to Plan provisions mirroring the ERISA regulations and requiring that

The review of an adverse benefit determination for a Disability Pension . . . will:

(1) not give deference to the initial adverse benefit determination and will be conducted by a fiduciary of the Plan who is neither the individual who made the initial denial of the claim nor a subordinate of such individual;

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

(2) in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, include consultation with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment and who is not the individual who was consulted in connection with the determination that is the subject of the appeal nor the subordinate of such individual.

(Pension Plan at SAG00536–00537); cf. 29 C.F.R. § 2560.503-1(h)(3)(ii), (iii), (v).  Plaintiff argues that the first requirement was not met here because the decisionmakers with respect to the initial denial—Dowdell, Chavez, and Fox Rothschild attorney Stimson—were involved in the appeal hearing.  (See Opp. at 9.)  This argument has no merit.  First, as discussed above, neither Stimson nor any Fox Rothschild attorney was involved with the initial denial or had any influence on the determination of the appeal.  As to Dowdell and Chavez, the appeal was decided by the Board's Benefits Committee, which did not include these individuals or anyone else involved in the initial denial.  (See 6/1810 Benefits Committee Hearing Minutes at SAG00293.)  Plaintiff appears to take issue with their mere presence at the hearing.  However, this does not create a conflict; rather, the relevant requirement is that the appeal be conducted by a fiduciary not involved in the initial denial.

Plaintiff also argues that she was denied a full and fair hearing on the basis that the second requirement above was not met, because Plan Medical Consultant Dr. Shakman provided the only medical consultations relied upon in the administrative determination and the appeal.  (See Opp. at 9–10, 12–13.)  Plaintiff is correct; the Board was required to seek a second medical opinion in these circumstances, because the determination as to the nature of Plaintiff's disability, and whether this disability "occurred in the course of employment covered by th[e] Plan," depended at least in part on a medical judgment.  (Pension Plan at SAG00470, SAG00514.)  Dr. Shakman made the initial determination, in September of 2004, that Plaintiff was totally disabled within Plan meaning based on her "severe depression."  (See SGI ¶ 76; Shakman Decl. ¶ 3, Ex. A at SAG00052.)  When Plaintiff sought to convert her disability pension to an occupational disability pension, in early 2010, Shakman was again consulted during the Plan's initial review, and again opined, on the basis of the documents in Plaintiff's file, that she was disabled on the basis of her mental illness.  (SGI ¶¶ 81–82; 2/12/10 Dr. Shakman Report.)  A second opinion was not sought in connection with Plaintiff's appeal.

Defendants argue that no second opinion was required, because (1) the determination as to the basis for Plaintiff's disability had already been made in 2004 and was not challenged by Plaintiff at that time; and (2) in deciding Plaintiff's request, the Board considered numerous

JS - 6     **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

reports by third-party doctors.  (Docket No. 35 [Reply] at 11–12.)  However, Plaintiff's request to convert her pension plainly presented the question of the nature of her disability and whether it occurred in the course of her covered employment.  Under the Plan terms, when an adverse determination was reached as to Plaintiff's conversion request, the Plan was required to enlist a second health care professional with appropriate training to review Plaintiff's file.  (See Pension Plan at SAG00536–00537.)  The medical opinions offered by the various practitioners who had treated Plaintiff over the years could not stand in for this determination, because these professionals were not tasked with providing a holistic review of Plaintiff's records on Defendants' behalf.  Accordingly, the Court finds that a procedural conflict existed in the determination of Plaintiff's claim, and the Court will review the denial of Plaintiff's request with "a higher degree of skepticism."  Salomaa, 642 F.3d at 676.[5]

### 3. APPLICATION

#### a. "Skeptical" Abuse of Discretion Standard

Under the abuse of discretion standard, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'"  Salomaa, 642 F.3d at 675 (quoting Conkright v. Frommert, 130 S. Ct. 1640, 1651 (2010)) (some internal quotation marks omitted).  "A plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination."  Anderson v. Suburban Teamsters of No. Ill. Pension Fund Bd. of Trustees, 588 F.3d 641, 649 (9th Cir. 2009)) (citing Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 960 (9th Cir. 2001)).  "[T]he test for abuse of discretion in a factual

---

[5] Plaintiff also argues that she was denied a full and fair review on the bases Shakman's opinions were "conclusory," and that Shakman was not, in any event, an independent consultant.  (See Opp. at 6, 9–10, 12.)  As to the latter point, Plaintiff does not explain why she believes that Shakman was not an independent consultant (see Opp. at 9–10), but the Court assumes that this is because he was either employed by Defendants or provided services for them on a repetitive basis. However, the Plan rules relied upon do not address issues related to the initial medical determination, including the independence of the consultant or the level of written analysis required.  Rather, they require only that on appeal of an adverse benefits determination, a second medical professional with appropriate qualifications and who is not a subordinate of the first medical professional be consulted.  (See Pension Plan at SAG00537.)  Moreover, on a review of the record, the Court cannot agree that Shakman's evaluation was insufficiently thorough.  Plaintiff makes much of the question posed in Shakman's February 2010 opinion as to whether psychiatric reports in Plaintiff's file addressed "her occupational experience as causative" of her mental illness.  (See Opp. at 6, 12 (quoting Dr. Shakman 2/12/10 Report).)  However, the question does not suggest, as Plaintiff argues, that Shakman did not review Plaintiff's file; indeed, there are no psychiatric reports in the administrative record addressing with any specificity how Plaintiff's work-related injuries may have impacted her psychiatric diagnosis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|

| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al |
|---|---|

determination . . . is whether '[the court is] left with a definite and firm conviction that a mistake has been committed,' and [the court] may not merely substitute [its] view for that of the fact finder. To do so, [the court] consider[s] whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" Salomaa, 642 F.3d at 676 (9th Cir. 2011) (quoting United States v. Hinkson, 585 F.3d, 1247, 1262 (9th Cir. 2009)). Because the Board did not seek a second medical opinion in determining Plaintiff's appeal, as required by the Plan rules and ERISA regulations, the Court discounts somewhat the deference accorded to the Board's decision. See Salomaa, 642 F.3d at 676; Saffon, 522 F.3d at 868–69. A procedural conflict weighs more heavily when there is evidence of malice, self-dealing, a parsimonious claims-granting history, inconsistent reasons for denial, a failure to adequately investigate a claim or to ask the plaintiff for necessary evidence, a failure to credit the plaintiff's reliable evidence, or a repeated denial of benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of the evidence in the record. Abatie, 458 F.3d at 968–69; see also Salomaa, 642 F.3d at 674.

### b. Analysis

Defendants argue that, even under heightened review, there is no genuine issue of material fact as to whether the Board abused its discretion in determining that Plaintiff did not qualify for an occupational disability pension. They seek summary judgment on the basis that (1) the Board of Trustees at all times provided Plaintiff with written explanations for the denials, and the reasons for denial did not change; (2) there is no evidence that the Board construed the provisions of the Pension Plan in a way that conflicts with the plain language of the Plan; and (3) the denial was not based on clearly erroneous findings of fact. (Docket No. 29 [Mem.] at 18–21; Reply at 6–10, 14–15, 18–20.) As to the Board's factual findings, Defendants argue that Plaintiff was "totally disabled" within Plan meaning due to "severe major depression," and that there is "zero evidence in the administrative record" that this impairment was developed in the course of her employment. (Id. at 18–19.) Instead, there is significant evidence that many other circumstances in her life led to this disability, including the traumatic events she suffered as a child and her abusive 13-year marriage. (Id. at 19.)

Defendants rely on voluminous evidence in the record supporting a conclusion that Plaintiff's disabling condition was her severe major depression. Plaintiff's application for SSA disability benefits was initially denied in January of 2003, prior to her psychiatric hospitalizations. At that time, Plaintiff sought benefits for a disability that she contended was physical and arose from her occupation as a stunt actress. (1/31/03 SSA Denial.) Then, from March 2003 onward, Plaintiff was treated by various doctors, who all agreed that she suffered from severe major depression. Two of these wrote letters in support of Plaintiff's application for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

disability benefits.  Dr. Cassin's letter gave Plaintiff's DSM-IV diagnosis, and explained that

> At present [Plaintiff] is not able to be gainfully employed and has not been . . . since early 2001.  There are physical limitations preventing her from returning to the kind of work she used to do and many other physically demanding jobs.  <u>Her depression makes her at present unable to undertake assessment and retraining for another kind of empl[]oyment.</u>

(1/23/04 Dr. Cassin Letter (emphasis added).)  Dr. Handler wrote that, although he had treated Plaintiff for years for her physical injuries, Plaintiff's "main and indeed disabling problem is major depression."  (1/27/04 Dr. Handler Letter.)  In granting Plaintiff's appeal of her initial SSA denial, ALJ Wright determined that Plaintiff was disabled, under Social Security regulations, on the basis of her "severe major depression," considered a "severe" impairment. Although the decision describes Plaintiff's physical injuries and suggests that Plaintiff's depression is "complicated" by them, the decision's findings unambiguously indicate that Plaintiff is disabled on the basis of her depression.  (2/20/04 SSA Appeal Determination at SAG00120–SAG00122.)  In addition, in 2006, Plaintiff signed a Workers Compensation Settlement and Release, releasing a claim for workers compensation benefits on the basis of her physical injuries, which acknowledged that there was a "serious dispute" as to "the nature and extent of permanent disability, if any" and "the duration of temporary disability, if any." (10/26/06 Workers Compensation Settlement and Release.)  On this record, the Plan's Medical Consultant, Dr. Shakman, determined twice, in September 2004 and February 2010, that Plaintiff's disabling condition was severe major depression.

At the same time, there is limited evidence in the record that Plaintiff's depression was caused, primarily or even in part, by the physical injuries that she sustained in the course of her employment.  Dr. Kennedy's report admitting Plaintiff to Fletcher Allen for psychiatric care, in April of 2003, discusses in detail the social factors influencing Plaintiff's mental health. (4/22/03 Fletcher Allen Admission Report.)  The psychiatric reports in Plaintiff's file refer to her physical impairments and to the "multiple stressors" in Plaintiff's life, but none discuss her occupational injuries as causative of her mental illness.  (See id.; 3/24/03 Adirondack Medical Center Admission Report; 1/23/04 Dr. Cassin Letter; 1/27/04 Dr. Handler Letter.)

Plaintiff takes the position that Defendants ignored important evidence in the administrative record, accepted Dr. Shakman's opinion without critical review, failed to respond to Plaintiff's logical arguments in support of her cause, and sought ways to deny benefits to Plaintiff.  Plaintiff asserts that, based on the administrative record, it is equally reasonable to conclude that her disability was caused, at least in part, by her physical injuries.  (Opp. at

JS - 6   **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

10–14.)  Moreover, because she was denied a full and fair review due to the lack of an independent medical consultation on appeal, the appropriate remedy is remand to the Plan administrators for a de novo determination of her request.  (Docket Nos. 43 [Plaintiff's 3/12/12 Submission], 48 [Plaintiff's 4/4/12 Submission], 51 [Plaintiff's 4/20/12 Submission].)[6]

Plaintiff relies on evidence in the administrative record that she contends support a finding that her disability was partially physical, and thus creates a genuine issue as to whether Defendants' determination was reasonable.  This evidence includes (1) Dr. Handler's evaluation that Plaintiff was disabled from her occupation as a stunt actress (see 12/18/02 Dr. Handler Medical Report; 3/24/03 Adirondack Medical Center Admission Report at SAG00069–SAG00070); (2) Dr. Sardoff's reports, based on his July 2003 examination of Plaintiff in connection with her workers compensation claim, indicating that she sustained serious physical injuries in her three decades of work as a stunt actress, and that these injuries prevented her from returning to this type of work (see 9/4/04 Sardoff Medical Report; 10/22/04 Sardoff Medical Report); (3) the undated and unidentified medical report, apparently created on Plaintiff's behalf in the context of her application for a disability pension in 2004, indicating that she was "totally disabled" within the Plan meaning on the basis of her back injuries (see Fleishman Decl. ¶ 2, Ex. 1 at SAG00053); (4) ALJ Wright's extensive discussion of Plaintiff's physical injuries in his February 2004 determination that she was eligible for SSA disability benefits (see 2/20/04 SSA Appeal Determination); (5) the fact that ALJ Wright awarded SSA benefits retroactive to February 25, 2002, a year before Plaintiff was first hospitalized for depression (see Fleishman Decl. ¶ 2, Ex. 1 at SAG00031); (6) Plaintiff's own belief, expressed in her application for a disability pension, in August of 2004, that she suffered from multiple physical and mental disabilities (see Bernard Decl. ¶ 25, Ex. U); and (7) Plaintiff's successful workers compensation settlement, in October 2006, for $140,000 (10/26/06 Workers Compensation Settlement and Release).  Plaintiff also relies on the SSA document, purportedly generated in the context of this litigation on January 27, 2012, at her request, indicating that SSA's records showed that Plaintiff was found disabled on February 25, 2002, due to "(1) AFFECTIVE DISORDERS (2) DISORDER OF BACK (DISCOGENIC & DEGENERATIVE) L5-S1 severe."  (Hoffman Decl. ¶ 4; Fleishman Decl. ¶ 2, Ex. 672.)

Even viewing the record with skepticism, the Court cannot agree with Plaintiff that a genuine issue exists for trial that the Board's determination that she did not qualify for an

---

[6] The Court observes that Plaintiff raised this latter argument for the first time at the hearing and in three post-hearing submissions.  The first two of Plaintiff's post-hearing submissions were unauthorized, in that they served only to refer the Court to cases that Plaintiff should have identified in her Opposition.  However, the Court declines Defendants' invitation to strike the submissions and to sanction Plaintiff.  (See Docket Nos. 44, 49, 52.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

occupational disability pension was factually unreasonable.  First, the Court agrees that Plaintiff was disabled from continuing to work as a stunt actress.  No one disputes that.  But when she retired from her work as a stunt actress there were many much less strenuous occupations available to her, as noted by many of the physicians who reported on her condition.  Thus, while her injuries limited her prospects, it did not eliminate them.  This is important because the Plan's definition for "total disability" requires that a claimant be determined disabled by the SSA, and be independently determined by the Board to be "unable to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment."  (Pension Plan at SAG00470, SAG00514 (emphasis added).)  Both Drs. Handler and Sardoff concluded that Plaintiff's physical injuries prevented her from returning to work <u>as a stunt actress</u>.  But it was her hospitalizations with severe, debilitating depression that led Dr. Cassin to report that her depression precluded Plaintiff from seeking other gainful employment.  (12/18/02 Dr. Handler Medical Report; Bernard Decl., Ex. M at SAG00086; 3/24/03 Adirondack Medical Center Admission Report at SAG00069–SAG00070; 9/4/04 Dr. Sardoff Medical Report; 1/23/04 Dr. Cassin Letter; 10/22/04 Dr. Sardoff Medical Report.)  In short, the contemporaneous record, viewed as a whole and not by taking select phrases out of context, clearly demonstrates that Plaintiff was not totally disabled on the basis of her physical injuries.  On the other hand, her severe major depression alone was enough to allow the Social Security Administration to conclude, on review, that she was disabled from any substantial gainful activity.  As a result, she became totally disabled within the Plan meaning.  The medical evaluations in Plaintiff's file are consistent with the SSA determinations that, prior to her psychiatric hospitalizations, Plaintiff did <u>not</u> qualify as disabled under SSA regulations, but that, after her mental health difficulties became severe, she <u>did</u> qualify.  Without eligibility for SSA benefits, Plaintiff <u>could not even seek</u> disability benefits under the Plan.

The record does not indicate why Plaintiff sought SSA disability benefits from February 25, 2002—more than a year prior to her first hospitalization—or why benefits were awarded retroactive to this date.  However, there is evidence that, prior to her hospitalizations, Plaintiff suffered from a "history of depression" that had been "unsuccessfully treated" with various anti-depressant medications.  (3/24/03 Adirondack Medical Center Admission Report).  Moreover, in view of the plain language of ALJ Wright's decision indicating that Plaintiff's disability was psychiatric, the Court cannot agree with Plaintiff that the only plausible explanation is that he determined her disability to be partially physical.  Nor does Plaintiff's own assessment of the nature of her disability or her achievement of a workers compensation settlement aid her.  The former represents only Plaintiff's perception, and not the required medical and administrative judgment.

As to the workers compensation settlement, it is not terribly relevant to the Court's

JS - 6    **LINK: 29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

determination because Plaintiff was not required to prove total disability from any occupation. However, it is worth noting that the release she executed expressly acknowledged the existence of a dispute as to the nature and extent of any physical injury or disability.  (See 10/26/06 Workers Compensation Settlement and Release.)  Moreover, to the extent that the unidentified medical report offers the view of one unnamed medical professional that Plaintiff was totally disabled on the basis of her physical injuries (see Fleishman Decl. ¶ 2, Ex. 1 at SAG00053), this evidence is not explained by Plaintiff and is more than outweighed by the other medical reports indicating that Plaintiff's primary disabling condition was her severe major depression.  Finally, the purported SSA document produced in the context of this litigation does not alter the Court's analysis.  This document (1) was produced after the Board concluded its determination and thus was not available to it; and (2) conflicts with ALJ Wright's contemporaneous determination as to the nature of Plaintiff's disability under SSA regulations.

Second, no genuine issue exists as to whether it was unreasonable for the Board to conclude that the administrative record lacked sufficient evidence supporting a finding that the physical injuries that Plaintiff suffered in the course of her employment—which were not all of the physical ailments that she suffered—played a significant or primary causitive role in her depression, such that her depression "occurred in the course of employment covered by th[e] Plan."  Plaintiff's psychiatric reports reference her numerous physical injuries, and Dr. Cassin's report, in particular, listed Plaintiff's back, knee, and shoulder injuries—as well as her urogenital and gastrointestinal disorders—as part of her Axis III diagnosis.  (See 1/23/04 Dr. Cassin Letter; 3/24/03 Adirondack Medical Center Admission Report; 4/22/03 Fletcher Allen Admission Report; 1/27/04 Dr. Handler Letter.)  Not one of them indicates any connection between her residual physical condition as a result of work injuries and her depression.  Rather, the bulk of each of these reports is dedicated to describing the social factors influencing the onset of Plaintiff's severe depression, including the history of abuse suffered, family and financial difficulties, and recent changes in life circumstances.  (See 3/24/03 Adirondack Medical Center Admission Report; 4/22/03 Fletcher Allen Admission Report.)  Accordingly, two Axis IV diagnoses for Plaintiff—Fletcher Allen's and Dr. Cassin's—indicated "multiple" and "severe" psychosocial stressors.  (4/22/03 Fletcher Allen Admission Report at SAG00087; 1/23/04 Dr. Cassin Letter.)  Indeed, nowhere has Plaintiff argued, in the administrative proceedings or in this litigation, that her physical injuries contributed to her depression.  She instead focuses on arguing that she was disabled in part due to her physical injuries.

Nor can the Court agree with Plaintiff that a trier of fact could find that the Board's review of her conversion request was insufficiently thorough, inadequately explained, or otherwise improper.  Rather, Plaintiff was given numerous opportunities to supplement the administrative record with any documents that she felt were relevant; Plaintiff received three

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

written explanations for the denial of her request, all of which gave consistent reasoning; Plaintiff appeared before the Benefits Committee; and, upon review of all documents in the record, the Board based its decision on the whole record, emphasizing the SSA determination as to the nature of Plaintiff's disability, Dr. Shakman's opinion, and the lack of documentation discussing Plaintiff's occupational injuries as causitive of her mental illness.  (See Bernard Decl. ¶ 31, Ex. AA (acknowledging receipt of Plaintiff's appeal and stating that she may provide additional documentation); Fleischman Decl. ¶ 2, Ex 1 at SAG00009 (SAG-PPHP note of 6/1/10 relaying to Plaintiff that "she had every right to add anything she wanted in the appeal and that everything she has submitted would be part of her appeal"); 2/24/10 Conversion Denial; 5/11/10 SAG-PPHP Letter; 6/18/10 Benefits Committee Hearing Minutes; 6/22/10 Benefits Committee Denial.)  Relying on Booton v. Lockheed, 110 F.3d 1461 (9th Cir. 1997), Plaintiff takes issue with the fact that none of the Plan's written explanations directly addresses her argument that the SSA must have determined her disability to be partly physical, because benefits were awarded retroactive to February 25, 2002, which she brought to Chavez's attention directly on April 30, 2010.  (See Fleishman Decl. ¶ 2, Ex 1 at SAG00031.)  However, this case is not analogous to Plaintiff's.  In Booton, the insurer had denied the plaintiff's claim for dental work done on her back teeth to prepare them to support a splint for resetting her front teeth, which had been kicked by a horse.  Booton,110 F.3d at 1462.  The Ninth Circuit found that the insurer "never came to terms with Booton's argument that her non-injured back teeth required injury-related work, a concept so straightforward that anyone with good will and a modicum of intelligence would have been bound to grasp it." Id. at 1463.  As discussed above, the Court does not find this element of Plaintiff's argument particularly persuasive.  It is highly likely that she applied for disability on one basis as of a particular date, and when the basis for a favorable decision changed, no one thought to review whether or not the February 25, 2002, date would still apply.  Alternatively, ALJ Wright may have simply assumed that her depressive state had preceded her first hospitalization and neglected to require proof on that point.  In any event, ALJ Wright's decision does not explain why benefits were awarded as of February 25, 2002.  What is clear is that he determined Plaintiff to be disabled on the basis of her severe major depression, and more plausible explanations for the benefits award date exist than that offered by Plaintiff.

In the Court's view, the record does not show or suggest Defendants seeking a rationale to deny Plaintiff's conversion request.  In arguing this point, Plaintiff relies on (1) the early discussions among Plan officers and employees suggesting that they understood the SSA decision to have determined that Plaintiff was disabled due to her mental illness combined with her physical injuries (see Fleishman Decl. ¶ 2, Ex. 1 at SAG00268–SAG00269); (2) the discussions among Plan officers and employees regarding whether the Plan language permitted occupational disability based on cumulative injuries, and whether, if Plaintiff's conversion request were granted, the additional benefits could be made available only going forward (see id.

JS - 6    LINK: 29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|

| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al |
|---|---|

at SAG00267–SAG00269, SAG00348, SAG00383); (3) Dowdell's e-mail statement to Stimson in June of 2010, just prior to the appeal hearing, that the Plan "did get some additional information . . . which prompted [Dr. Shakman] to opine that [Plaintiff's] disability may be partially related to her injuries sustained as a stunt woman" (id. at SAG00383).  However, from the beginning, Chavez, the Pension Director, took the position that Plaintiff's disability was "predominantly psychiatric" and not incurred in the course of her employment.  (See Fleishman Decl. ¶ 2, Ex. 1 at SAG00269.)  The remaining discussions show Plan employees engaged in a thorough review of all aspects of Plaintiff's claim, through the initial determination and appeal.

Accordingly, following a detailed review of the administrative record and the Parties' arguments, the Court concludes that there is no genuine issue of material fact for trial as to whether the Board abused its discretion, even viewing this determination "skeptically."

### c.  Remand to the Plan?

Plaintiff argued for the first time at the hearing on Defendants' motion that, should the Court determine that Plaintiff was denied a full and fair review on the basis that a second medical professional was not consulted, the appropriate remedy is remand to the Plan for a full and fair review.  After the hearing, Plaintiff filed three notices of supplemental authorities, only one of which cites a decision reached subsequent to the hearing in this case.

Only Plaintiff's third filing was proper, as a notice of subsequent authority.  Nonetheless, the Court explains why each of Plaintiff's authorities does not support the proposition that denial of a full and fair review results in an automatic remand to the plan administrator.  First, the Ninth Circuit has made clear that, where the plan confers the administrator with discretion, the effect of a procedural irregularity is that the administrator's determination is reviewed with a higher degree of skepticism.  Salomaa, 642 F.3d at 674.  Plaintiff's out-of-circuit cases stand only for the unremarkable propositions that remand is appropriate (1) where the court determines that the plan administrator's decision was arbitrary and capricious but the administrative record is incomplete, see Miller v. United Welfare Fund, 73 F.3d 1066, 1074 (2d Cir. 1995); (2) where the administrator fails to "substantially comply" with ERISA's procedural requirements but abuse of discretion is not obvious, see Lafleur v. Louisiana Health Serv. and Indem. Co., 563 F.3d 148, 154–115, 157 (5th Cir. 2009) (finding five procedural violations, including that a second urologist was not consulted on appeal); and (3) where a procedural irregularity, such as a change in the reasons offered for denial, prevents a plaintiff from developing the administrative record, see Martin v. Hartford Life and Accident Ins. Co., No. 11-1310-cv, at 4–5 (2d Cir. Apr. 19, 2012).  Here, the only procedural violation committed was that Defendants failed to consult a second medical professional on appeal.  Plaintiff makes no argument that the failure to consult a

JS - 6    **LINK: 29**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-06913 GAF (AJWx) | Date | May 3, 2012 |
|---|---|---|---|
| Title | Leslie Hoffman v. Screen Actors Guild-Producers Pension Plan et al | | |

second medical professional on appeal prevented full development of the administrative record, with the exception of this missing opinion. Defendants' determination, based on the available administrative record, was reasonable. Moreover, it is difficult to conclude that, viewing this administrative record, a second medical professional would have agreed with Plaintiff that her total disability occurred in the course of her employment. Accordingly, the Court concludes that remand to the Plan is not required for the sole purpose of producing this opinion and reviewing the administrative record in light of it.

### IV.
### CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** Defendants' motion for summary judgment. The trial presently scheduled to commence on May 8, 2012, is hereby **VACATED**.

**IT IS SO ORDERED.**